STATE FARM FIRE & CASUALTY COMPANY, Appellee,

v.

CONDON et al., Appellants.

[Cite as *State Farm Fire & Cas. Co. v. Condon*, 163 Ohio App.3d 584, 2005-Ohio-5208.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040625.

Decided Sept. 30, 2005.

Rendigs, Fry, Kiely & Dennis, L.L.P., John F. McLaughlin, and Lynne M. Longtin, for appellee.

Sirkin, Pinales, Mezibov & Schwartz, H. Louis Sirkin, and Jennifer M. Kinsley, for appellants.

GORMAN, Presiding Judge.

{¶ 1} Defendants-appellants, Thomas Condon and his company Thomas Condon Photography Ltd. (collectively, "Condon"), appeal from the trial court's judgment in favor of plaintiff-appellee, State Farm Fire & Casualty Company, on its complaint seeking a declaration that it was not obligated to defend or indemnify Condon under its business-insurance policies for federal lawsuits brought by family members of deceased persons whose remains were impermissibly manipulated and photographed by Condon in the Hamilton County Morgue. Because State Farm's policies excluded coverage for personal-injury claims arising from the willful violation of a penal statute, we affirm.

{¶ 2} Condon photographed the bodies in the morgue between August 2000 and January 2001. His convictions on eight counts of the gross abuse of a corpse, in violation of R.C. 2927.01(B), "were the result of Condon's using corpses in the Hamilton County Morgue as models for his photographic art without official permission or the consent of the deceased individuals' families." *State v. Condon,* 157 Ohio App.3d 26, 2004–Ohio–2031, 808 N.E.2d 912, at ¶ 2. We affirmed his convictions, see *State v. Condon,* 152 Ohio App.3d 629, 2003–Ohio–2335, 789 N.E.2d 696, and the Ohio Supreme Court refused to accept the case for review. See *State v. Condon,* 99 Ohio St.3d 1546, 2003–Ohio–4671, 795 N.E.2d 684.

{¶ 3} State Farm is currently defending Condon, under a reservation of rights, in a federal class-action suit pending in the United States District Court for the Southern District of Ohio. The federal lawsuit was brought by family members of the deceased persons. The lawsuit, brought under Sections 1983 and 1985, Title 42, U.S.Code, alleges that Condon, Jonathan Tobias, M.D., and other government officials at the Hamilton County Morgue violated, and conspired to violate, the families' constitutional rights in three ways. The families claim that the federal defendants have violated their substantive due-process rights by actions that shock the conscience, by depriving them of their property rights in the remains of their loved ones, and by depriving them of their fundamental right to privacy. The federal plaintiffs allege that Condon wrongfully gained access to the morgue,

where, after manipulating the bodies, he took and distributed photographs of their family members.

{¶ 4} On July 25, 2002, State Farm filed this declaratory judgment action. State Farm moved for summary judgment and supported its motion with affidavits and attached exhibits. Condon filed a memorandum in response. In a proceeding that was not transcribed for this court, the parties agreed with the trial court to convert their arguments on the motion for summary judgment into a bench trial based on the evidence submitted in support of or in response to the motion.

{¶ 5} On August 31, 2004, the trial court issued an amended decision and entry acknowledging that it was ruling in a bench trial and granting judgment in favor of State Farm. Live testimony was not taken. The trial court declared the rights of the parties and identified numerous justifications for ruling in State Farm's favor, including its finding that "no claim asserted against Condon occurred during a State Farm Policy [covered] period."

{¶ 6} In a single assignment of error, Condon now argues that the trial court erred in entering judgment for State Farm because (1) the acts that are the basis of the federal plaintiffs' claims "occurred" while Condon was insured by State Farm, (2) the federal plaintiffs have properly raised claims for personal injury and property damage, and (3) Condon did not willfully violate a penal statute.

{¶ 7} State Farm issued three business-insurance policies to Condon covering interrupted periods of time from October 1998 to March 2002. The policies provided that State Farm "would pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury * * * caused by an occurrence." (Emphasis omitted.)

{¶ 8} "Occurrence" was defined as an accident that results in bodily injury or property damage, or the commission of an offense or series of related offenses that result in personal injury. "Personal injury" was defined as "injury, other than bodily injury, arising out of one or more of the following offenses:

{¶ 9} "a.   false arrest, detention or imprisonment;

{¶ 10} "b.   malicious prosecution;

{¶ 11} "c.   wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

{¶ 12} "d.   oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

{¶ 13} "e.   oral or written publication of material that violates a person's right of privacy."

{¶ 14} Each policy excluded coverage for bodily injury or property damage that is "expected or intended from the standpoint of the insured" or resulted from the "willful and malicious acts of the insured."   Most important, in subsection 16(d), the policies excluded coverage for personal injury "arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured * * *."

### Occurrences During Covered Periods

{¶ 15} Condon first argues that the trial court erred by concluding that the acts for which he seeks a defense and indemnification did not occur during a covered period.   State Farm's first policy expired on October 31, 1999.   Afterwards, there was no State Farm policy in place until December 22, 1999.   This second policy expired on December 1, 2000.   Again, no State Farm policy extended coverage until February 7, 2001, when the third policy took effect. Condon took the morgue photographs between August 2000 and January 2001.

{¶ 16} Relying upon *Trinity Universal Ins. Co. v. Turner Funeral Home, Inc.* (Dec. 12, 2003), E.D.Tenn. Nos. 1:02–cv–231, 1:02–cv–298, and 1:03–cv–083, the trial court concluded that the families were not actually harmed until the coroner informed them that the photos had been taken.   This occurred between January 19 and January 25, 2001.   Thus, the "occurrence" required for coverage had happened in the gap between the second and third policies.   But *Trinity Universal* stands for the proposition that a plaintiff's claim for mental anguish does not *accrue* until the plaintiff is actually aware that a relative's corpse has been mishandled.   See id.; see, also, *Biro v. Hartman Funeral Home* (1995), 107 Ohio App.3d 508, 669 N.E.2d 65 (emotional-distress claims do not accrue until the plaintiff learns of the tort).

{¶ 17} State Farm argues that we must defer to the findings of the trial court.   This deference would preclude reversing its judgment if it is supported by some competent, credible evidence.   See *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614 N.E.2d 742; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.   This is the proper standard where the trial court has made factual findings after having heard the testimony of witnesses.   See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273; see, also, *Stand Energy Corp. v. Cinergy Servs.* (2001), 144 Ohio App.3d 410, 417, 760 N.E.2d 453.

{¶ 18} Here, we do not contest the trial court's factual findings about the duration of the coverage periods, but we do hold that the trial court incorrectly interpreted the meaning of the contract term "occurrence," confusing it with the

accrual of a claim. Our resolution of these issues on appeal requires only the interpretation of the policy terms. These issues raise only questions of law that we review de novo. See *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146; see, also, *Air Prods. & Chems., Inc. v. Indiana Ins. Co.* (Dec. 23, 1999), 1st Dist. Nos. C–980947 and C–990009, 2000 WL 955600.

{¶ 19} There is no requirement in the policies that the harm to third persons be completed during a covered period. The policies do not require that a cause of action by third persons must accrue during coverage. As the term is defined in the policies, "occurrence" refers to the accident or the offense or series of related offenses that result in an injury to third persons. The occurrence in this case was Condon's manipulation and photography of the bodies in the morgue. Condon completed all the acts underlying his convictions for the gross abuse of the corpses between August 2000 and January 2001.

{¶ 20} Thus, some of the photographs were taken during the second covered period. Because Condon seeks coverage against a class action, for purposes of this declaratory judgment action, it is impossible to identify which plaintiffs have claims related to photographs taken under the covered period and which do not. Thus, the allegations only state claims "which [are] potentially or arguably within the policy coverage." *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 180, 9 OBR 463, 459 N.E.2d 555.

### Personal Injury, Intentional Acts, and the Penal Statute Exclusion

{¶ 21} But Condon's success on the coverage-dates issue presents only a hollow victory. Both Condon and State Farm agree that at the time the trial court entered judgment in this case, the only claims remaining against Condon from the federal lawsuits were claims under Section 1983, Title 42, U.S.Code. State Farm asserts that state claims for civil conspiracy, intentional and negligent infliction of emotional distress, and unjust enrichment have been subsequently reinstated against Condon. This is not reflected in the record certified for our review. See App.R. 9(A). The written decision of the federal court reinstating the state claims has been appended to State Farm's appellate brief. Because the federal court's decision came after the trial court's judgment and was not part of the record before the trial court, we cannot decide this appeal on the basis of that decision. See *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, syllabus; see, also, *Cincinnati School Dist. v. Ohio Dept. of Edn.,* 1st Dist. No. C–040434, 2005–Ohio–1876, 2005 WL 927162, fn. 2.

{¶ 22} Condon acknowledges that the central tenets of the remaining federal claims, as reflected in the record, are claims for personal injury for violations of privacy arising out of Condon's wrongful entry into the morgue and his written

publication of the morgue photographs. But following the long-standing public policy in Ohio that "[l]iability insurance does not exist to relieve wrongdoers of liability for intentional, antisocial, criminal conduct," *Gearing v. Nationwide Ins. Co.* (1996), 76 Ohio St.3d 34, 38, 665 N.E.2d 1115, the policies exclude coverage for injuries resulting from intentional and criminal acts. In subsection 16(d), the exclusions section of the policy, coverage "does not apply to * * * personal injury * * * arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured."

{¶ 23} At his criminal trial, Condon was convicted of eight counts of gross abuse of a corpse, in violation of R.C. 2927.01(B), punishable as a felony of the fifth degree. R.C. 2927.01(B), which requires proof that a person "treat[ed] a human corpse in a way that would outrage reasonable community sensibilities," is a penal statute, or "a law that defines an offense and prescribes its corresponding fine, penalty, or punishment." Black's Law Dictionary (8 Ed.Rev.1999) 1449; see, also, *State v. Collier* (1991), 62 Ohio St.3d 267, 273, 581 N.E.2d 552.

{¶ 24} Condon relies upon *Manley v. Rufus Club Mozambique, Inc.* (1996), 111 Ohio App.3d 260, 675 N.E.2d 1342, where the Seventh Appellate District cautioned against invoking issue preclusion between criminal and civil actions, to assert that he did not act willfully. We note that, unlike the plaintiff in *Manley* who was merely a witness at trial, Condon, as a party, had every opportunity to fully litigate the issue of his culpable mental state in the criminal prosecution against him. See *Manley* at 263, 675 N.E.2d 1342.

{¶ 25} A conviction for gross abuse of a corpse requires proof that the accused acted recklessly. See *State v. Glover* (1984), 17 Ohio App.3d 256, 257, 17 OBR 524, 479 N.E.2d 901; see, also, R.C. 2901.21(B); *State v. Condon*, 152 Ohio App.3d 629, 2003–Ohio–2335, 789 N.E.2d 696, at ¶ 30–31. Under R.C. 2901.22(C), a person acts recklessly when "with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

{¶ 26} "Recklessness has been held to be the functional equivalent of willfulness in the civil context. * * * For the purpose of deciding whether the exclusion here has been triggered, reckless action is tantamount to willful conduct." *Nationwide Mut. Fire Ins. Co. v. Kubacko* (1997), 124 Ohio App.3d 282, 288, 706 N.E.2d 17; see, also, *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104, 559 N.E.2d 705, fn. 1 ("The term 'reckless' is often used interchangeably with 'willful' and 'wanton' "). Thus, a conviction for gross abuse of a corpse

is a willful violation of a penal statute. Pursuant to subsection 16(d), there is no coverage under the policies for the personal injuries alleged in this case.[1]

{¶ 27} The assignment of error is overruled, as Condon is not entitled to coverage under the State Farm policies. As Condon's conduct as alleged in the federal complaint is indisputably outside the scope of coverage, there is no duty to defend. See *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d at 180, 9 OBR 463, 459 N.E.2d 555.

{¶ 28} Therefore the judgment of the trial court is affirmed.

Judgment affirmed.

SUNDERMANN and HENDON, JJ., concur.

---

1. Even if the bodily-injury and property-damage claims remained at issue, it is likely that Condon's criminal convictions would trigger the policies' intentional-acts exclusion. See *Allstate Ins. v. Cole* (1998), 129 Ohio App.3d 334, 336, 717 N.E.2d 816 ("a criminal conviction, in and of itself, may conclusively establish intent for purposes of applying an intentional acts exclusion," and "a conviction involving the element of recklessness is sufficient to trigger an intentional acts exclusion, regardless of the underlying facts").